Michael S. Devereux (State Bar No. 225240)
WEXFORD LAW
9171 WILSHIRE BOULEVARD, SUITE 500
BEVERLY HILLS, CALIFORNIA 90210
TELEPHONE: (424) 444-0883

Attorney for Plaintiff, DANIEL NERSOYAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| DANIEL NERSOYAN,<br><br>        Plaintiff,<br><br>v.<br><br>COUNTY OF LOS ANGELES, a county corporation; COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT, a public entity; SHERIFF JAMES MCDONNELL, in his official capacity and as an individual; DEPUTY KENNETH COLLINS, individually and in his official capacity as a Deputy, and DOES 1 through 10, inclusive<br><br>        Defendants. | CASE NO. CV19-08109 SVW (MAAx)<br><br>Hon. Stephen V. Wilson<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; STATEMENT OF GENUINE ISSUES; DECLARATION OF MICHAEL S. DEVEREUX; EXHIBITS<br><br>Trial Date: TBD |

TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

      Plaintiff, Daniel Nersoyan ("Plaintiff"), hereby submits their opposition to the Motion of Defendant, ("Defendant"), for Summary Judgment on the grounds that triable issues of material fact do exist as to who breached the

contract, whether Defendant committed fraud against Plaintiff, and whether Plaintiff is entitled to declaratory relief, as more fully set forth in the Declaration of Michael Devereux and Exhibits attached thereto, concurrently filed and served herewith.

The Opposition shall be based on this Opposition, the attached Memorandum of Points and Authorities, the Declaration of Michael Devereux and Exhibits attached thereto, the Separate Statement of Undisputed Material Facts, concurrently filed and served, on the complete files and records of this action, and on such other oral and/or documentary evidence as may be presented at the hearing on the Motion.

Dated: March 4, 2021          WEXFORD LAW,



Michael S. Devereux
Attorney for Plaintiff
DANIEL NERSOYAN

Contents

I. INTRODUCTION ................................................................................................ 4
II. STATEMENT OF FACTS ................................................................................. 4
   A. The Crimes Against Plaintiff's Jewelry Business ...................................... 4
   B. The Monell Claims ..................................................................................... 5
      1. No Reason for Collins to be Assigned To Black and White Squad Car ........................................................................................................ 5
      2. LASD & County of Los Angeles Continue to Defend Collins ................ 6
      3. LASD Non-responsive to Taking Until Complaint in Writing ................ 7
      4. LASD's Sham Investigation Was a Coverup and/or Incompetence .......... 7
      5. The LASD had No Program for Deputies Tempted by Crime ................ 8
      6. The LASD Manages and Supervises Arguably the Largest Law Enforcement Agency in the United States with Outdated Methodologies ........................................................................................ 8
   C. Statute of Limitations ................................................................................ 10
III. ARGUMENT ................................................................................................... 11
   A. THE LAW IS SETTLED THAT SUMMARY JUDGMENT CAN ONLY BE GRANTED WHEN NO TRIABLE ISSUE EXISTS AS TO ANY MATERIAL FACT AND THE MOVING PARTY IS ENTITLED TO JUDGMENT AS A MATTER OF LAW. THE UNITED STATES SUPREME COURT HAS RULED THAT ALL REASONABLE INFERENCES DRAWN FROM THE FACTS MUST BE VIEWED IN THE LIGHT MOST FAVORABLE TO THE NON-MOVING PARTY ........... 11
   B. EVEN IF THE STANDARDS OF RULE 56 ARE MET, A COURT HAS THE DISCRETION TO DENY A MOTION FOR SUMMARY JUDGMENT ............................................................................................ 13
   C. PLAINTIFF HAS FILED TIMELY ...................................................... 13
IV. CONCLUSION ................................................................................................ 14
DECLARATION OF COUNSEL ........................................................................ 15

**CASES**

*Anderson v. Liberty Lobby, Inc*. (1986) 477 US 242 .............................................. 13
*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, (1986) ................................. 12
C*armen v. S.F. Unified Sch. Dist.,* 237 F.3d 1026, 1031 (9th Cir. 2001). ............................................................................................................. 12
*Katz v. Children's Hospital of Orange County* (9th Cir. 1994) 28 F3d 1520, 1534 ........................................................................................................ 14
Kennedy v. Silas Mason Co., (1948) 334 U. S. 249 ............................................... 13
*Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888-89 (1990). ................................ 13
*United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). .................................... 12

**RULES**

Rule 56(a) of the *Federal Rule of Civil Procedure* ............................................... 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case arises out of one of many criminal enterprises that former LASD Deputy Kenneth Collins (Collins) had operated under the color of law while employed with the LASD. The LASD provided Collins with the needed resources by assigning Collins to programs in which he would mingle with the community under the disguise of getting recently released and former convicts back into the community. The LASD programs were the means in which Collins would recruit the co-conspirators for his criminal enterprises. Per Collins testimony, the LASD had no programs, no policies and no procedures for deputies who were tempted by criminal activity.

## II. STATEMENT OF FACTS

**A. The Crimes Against Plaintiff's Jewelry Business**

The Plaintiff's jewelry business was a victim of many robberies and burglaries throughout 2014 and 2015, whereas the Plaintiff lost millions of dollars in cash and jewelry. In at least two of these events, the criminal was wearing a law enforcement uniform. The robbery in May 2014, was eventually solved by the FBI in 2018. Collins confessed to the Plaintiff's crime in another criminal case, no. CR 18-00038-ODW-1. The other burglaries remain unsolved.

In May 2014, Collins while on-duty conducted a traffic stop despite having no probable cause. In addition, Collins wasn't assigned to a duty in which there was reason to be conducting traffic stops. Further, Collins stopped the vehicle under the color of law, using a black and white squad car, wearing a badge, wearing his gun and baton, making an arrest and seizing funds. Not only was there no probable cause, but there was no reasonable suspicion.

Collins and a member/co-conspirator of his criminal enterprise spent weeks setting up the unlawful seizure with an elaborate plan that included a professional certification from the Gemological Institute of America (GIA) report for a diamond necklace that included the cut, color, clarity and carat weight of the diamonds. The plan was sophisticated enough to convince a long-time jeweler to purchase the product. This was not a new, naïve jeweler, this was a long time, experienced jeweler that had a credit line with Chase Bank for hundreds of thousands of dollars. That's how much trust the bank had with the Plaintiff jeweler.

**B. The Monell Claims**

1. <u>No Reason for Collins to be Assigned To Black and White Squad Car</u>

There was no reason whatsoever for the LASD to assign Collins a black and white squad car. As Collins stated to Lt. Kimura, he had no need to be making traffic stops and he hadn't made a traffic stop in years. Yet, Collins was assigned a squad car. It is Counsel's understanding that Collins used a squad car when

meeting with the FBI in their undercover sting. In addition, Collins boasted to the FBI that he had access to such in his bid to escort drugs from Los Angeles to Las Vegas.

Nevertheless, Collins did use a black and white vehicle in his traffic stop in May 2014. There was no probable cause for the traffic stop. It was just a ruse for Collins to unlawfully seize approximately $160,000 from the Plaintiff. Collins working with the criminal element in his assigned location, setup the situation to seize the monies without **probable cause** knowingly that there was a *"fair probability"* <u>that his superiors were not going to give much credence to a citizen's complaint</u>. Based upon this belief, Collins criminal enterprise continued for many years and protected by LASD management.

2. <u>LASD & County of Los Angeles Continue to Defend Collins</u>

To this day, the County of Los Angeles and the LASD defend Collins actions, despite the results of the FBI investigation. **To this day the LASD and the County of Los Angeles, have refused or failed to terminate Collins despite his conviction in another criminal enterprise. Collins is paid a pension while being incarcerated. Evidently, while working for the County of Los Angeles and for the LASD, crime does pay.**

In addition, his conduct to this day continues to be defended by the LASD management and the County of Los Angeles. Moreover, if it wasn't for the FBI, it

Plaintiff's Opposition To Defendants MSJ

is highly likely that Collins would still be on the streets of Los Angeles County conducting his criminal enterprise.

3. <u>LASD Non-responsive to Taking Until Complaint in Writing</u>

Plaintiff continuously complained to the LASD throughout 2014, regarding the heist in May.  Throughout 2014, the LASD was non-responsive.  It wasn't until Plaintiff filed a written complaint in late November 2014, that the LASD began to look into the matter.

The LASD claims that they began their investigation in December 2014 with correspondence to the Plaintiff.  However, the Plaintiff denies such.  Moreover, the United States Postal Service has no record of the alleged certified mailing.  Moreover, the LASD has no record that such mailing was received.

4. <u>LASD's Sham Investigation Was a Coverup and/or Incompetence</u>
Despite having the vehicle identified and the deputy described, it appears that the LASD investigation was nothing more than a sham that was completed after a two-minute telephone call to Collins in early 2015.

Again, the LASD claims to have sent correspondence to the Plaintiff.  The correspondence blows off the complaint, by stating that it may have been the LAPD, not the LASD.  Again, Plaintiff claims he never received such correspondence.  The records from the United States Postal Office supports Plaintiff's position since there is no record of the alleged certified mailing.  Moreover, the LASD has no record that the second mailing was received.

If the LASD had ran a simple background check on Collins, they would have discovered that Collins had six residences and at least eight phone numbers while employed with the LASD. These factors at the very least raise suspicion.

5. <u>The LASD had No Program for Deputies Tempted by Crime</u>

Collins states in his deposition, that the LASD had no program that he was aware of for deputies that would be tempted by criminal activity. It is unbelievable that the LASD who has employees that are constantly being exposed to criminals in the jail system, in the courthouse, and on the street had no program in place for employees who are tempted by criminal activity. Collins never considered himself a criminal, but had no program to turn when tempted by criminal activity because the LASD had nothing in place for such temptation. No program and apparently no procedure.

6. <u>The LASD Manages and Supervises Arguably the Largest Law Enforcement Agency in the United States with Outdated Methodologies</u>

The Los Angeles County Sheriff's Department (LASD) is a law enforcement agency which serves Los Angeles County, California -- an area totaling approximately 4,084 square miles with a population of almost 10 million people (2010 U.S. Census).[1] It is the largest Sheriff's Department in the world, with approximately 18,000 employees. *Id.* LASD provides general law enforcement

---

[1] Los Angeles Sheriff's Department, About Us, March 4, 2021 < https://www.lasd.org/about_us>

services to 42 contract cities, 141 unincorporated communities, 216 facilities, hospitals, and clinics located throughout the County, nine (9) community colleges, the Metropolitan Transit Authority and 37 Superior Courts. *Id.*

Despite the enormity of the LASD, the department refuses to embrace technology in the management and/or supervision of the LASD personnel other than a telephone and a radio. According to depositions, the LASD have not deployed any GPS technology in their vehicles, nor dashcams, nor body cameras.

The first dashcam was introduced by Texas law enforcement in 1983.[2] Today, the LASD vehicles don't have dashcams. More importantly, the LASD cannot provide at any given moment where one of their vehicles is located unless it is radio in. As Collins has demonstrated, anyone can take any vehicle at any time and use it in any fashion that they desire without knowledge of LASD supervisors and/or management. LASD has no manner in which to supervise and/or manage its inventory, nor the personnel assigned to that inventory.

Body cameras were introduced in 2005, but the federal government encouraged usage after the Ferguson shooting in 2014. In fact, in 2015, the United

---

[2] WiredSmart, The Evolution & History of Dash Cams, October 25, 2018 < https://wiredsmart.io/dash-cams/evolution-and-history/>

States Department of Justice awarded millions of dollars in funding to law enforcement for body cameras.[3]

It is incredible that an agency with approximately 18,000 employees does not embrace the technologies to help make it manageable. Arguably, without the technologies it is no surprise to hear about the LASD corruption stories that appear to hit the headlines several times a month.

### C. Statute of Limitations

In 2018, Plaintiff met with the FBI to discover that Collins took his monies in May 2014.

Plaintiff was not a percipient witness to the robbery in May 2014. As he testified, he had a doubt that even if a deputy was involved. He thought that he may have been hoodwinked by a trusted employee.

That belief was furthered by the fact that when Plaintiff did call the LASD immediately afterwards and continuously for months, each time the LASD denied that any arrests were made involving a large amount of cash. At one point, he mentioned that he believed that he believed a video tape existed, but the LASD was

---

[3] United States Department of Justice, "Justice Department Awards over $23 Million in Funding for Body Worn Camera Pilot Program to Support Law Enforcement in 32 States," September 21, 2015 < https://www.justice.gov/opa/pr/justice-department-awards-over-23-million-funding-body-worn-camera-pilot-program-support-law>

not interested in meeting with him. He was confused at that time and didn't know where to turn because he was led to believe that a deputy was not involved.

A friend suggested that Plaintiff contact the FBI. So Plaintiff did contact the FBI. He met with the FBI but then there were months of nothing.

Becoming frustrated, he filed a complaint with the County of Los Angeles. The LASD conducted a two-minute investigation and never got back to Plaintiff. So in May 2015, Plaintiff had no idea who robbed him of his monies.

### III. <u>ARGUMENT</u>

*A. THE LAW IS SETTLED THAT SUMMARY JUDGMENT CAN ONLY BE GRANTED WHEN NO TRIABLE ISSUE EXISTS AS TO ANY MATERIAL FACT AND THE MOVING PARTY IS ENTITLED TO JUDGMENT AS A MATTER OF LAW. THE UNITED STATES SUPREME COURT HAS RULED THAT ALL REASONABLE INFERENCES DRAWN FROM THE FACTS MUST BE VIEWED IN THE LIGHT MOST FAVORABLE TO THE NON-MOVING PARTY*

The law is settled that Summary Judgment can only be granted when no triable issues of material fact exist.

Rule 56(a) of the *Federal Rule of Civil Procedure* states in pertinent part that,

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

As will be shown in this opposition and supporting documents, there are genuine disputes as to certain material facts. There are triable issues of material fact as to all claims, including but not limited to the Monell claim, the 1983 action and

the tolling of the statute of limitations. Plaintiff contends that the Court should deny the Motion and allow all of the claims in this case to be heard on their merits, as the law favors.

The United States Supreme Court has stated that when reviewing a motion for summary judgment, the court must look at "the inferences to be drawn from the underlying facts . . . in the light most favorable" to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, (1986).

And the Ninth Circuit Court of Appeal has stated that the gist of a summary judgment motion is to require the adverse party to show that it has a claim or defense, and has evidence sufficient to allow a jury to find in its favor on that claim or defense. C*armen v. S.F. Unified Sch. Dist.,* 237 F.3d 1026, 1031 (9th Cir. 2001).

Plaintiff has several claims against Defendant, and more than sufficient evidence to allow a jury to find in its favor as documented in the Statement of Genuine Disputes of Material Fact.

Plaintiff has provided a sworn declaration and numerous Exhibits in support of their opposition of several facts that support their complaint, thus the Motion should be denied.

"The purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888-89 (1990).

### B. EVEN IF THE STANDARDS OF RULE 56 ARE MET, A COURT HAS THE DISCRETION TO DENY A MOTION FOR SUMMARY JUDGMENT

Even if the standards of Rule 56 are met, a court has the discretion to deny a motion for summary judgment if it believes that the "better course would be to proceed to trial." *Anderson v. Liberty Lobby, Inc*. (1986) 477 US 242, 255, *citing, Kennedy v. Silas Mason Co.,* (1948) 334 U. S. 249.

Here, the Defendants wrongful conduct including the taking without probable cause, the refusal or failure to assist the Plaintiff, the sham investigation, including the two-minute investigation, the pretentious follow-up to the Plaintiff, designed to coverup Collins conduct. If it wasn't for the FBI, Collins would still be conducting his criminal enterprise under the color of law.

### C. PLAINTIFF HAS FILED TIMELY

In *Katz v. Children's Hospital of Orange County*, moving papers stated that the injury from the HIV-contaminated blood occurred at time of discovery, summary judgment could not be granted on ground injury occurred earlier when transfusion given. *Katz v. Children's Hospital of Orange County* (9th Cir. 1994) 28

F3d 1520, 1534   The Ninth Circuit held that the moving party must put the opposing party on notice at the time the "injury" is claimed to have occurred.

Here, Plaintiff despite his due diligence was not certain of whom had taken his money.  To this day, he's not certain who burglarized his jewelry business of millions in cash and jewelry on at least two other occasions by someone dressed in law enforcement uniform.  The LASD's two-minute investigation did not turn up anything.  If not for the FBI meeting with Plaintiff in 2018, Plaintiff would not have known that it was LASD Deputy Collins that took his money in 2014.

Hence, the discovery of the injury was in 2018 after meeting with the FBI.

## IV.   CONCLUSION

Based on the above, Plaintiff respectfully requests that the Court deny Defendant's Motion for Summary Judgment and allow this case to proceed to trial, as the law clearly favors.

Dated:  March 4, 2021          WEXFORD LAW,

*Michael S. Devereux*
Michael S. Devereux
Attorney for Plaintiff
DANIEL NERSOYAN

# DECLARATION OF COUNSEL

1. I am duly admitted to practice before all courts in the State of California, and before the following federal courts: the Central District of California, the Eastern District of California, the Southern District of California, the Northern District of California, along with the Ninth Circuit Court of Appeals. I am the attorney of record in this matter. If called upon as a witness I could and would competently testify to the contents hereof.

2. I make this declaration in support of Opposition to Defendant's Motion for Summary Judgment.

3. As a proximate result of the actions of Defendant, Plaintiff has suffered damages at the very least in the amount of $158,000.

4. Attached hereto as Exhibit "4," is a true and correct copy of from the USPS url on the Internet that tracks mailings regarding letter sent on 12/16/2014.

5. Attached hereto as Exhibit "5," is a true and correct copy of from the USPS url on the Internet that tracks mailings regarding letter sent on 01/27/2015.

6. My preliminary investigation concludes that Collins had at least six residences from California to Texas while employed with the LASD. In addition, he had at least eight different phone numbers.

7. From Collins Deposition, Collins is paid a pension by the County of Los Angeles while incarcerated.

I declare the foregoing to be true and correct under the penalty of perjury.

EXECUTED on March 4, 2021, at Beverly Hills, California.

*Michael Devereux*
Michael Devereux

**Plaintiff's Opposition To Defendants MSJ**