Michael S. Devereux  (State Bar No. 225240)
WEXFORD LAW
9171 WILSHIRE BOULEVARD, SUITE 500
BEVERLY HILLS, CALIFORNIA  90210
TELEPHONE: (424) 444-0883

Attorney for Plaintiff, DANIEL NERSOYAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| DANIEL NERSOYAN,<br><br>                    Plaintiff,<br><br>v.<br><br>COUNTY OF LOS ANGELES, a county corporation; COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT, a public entity; SHERIFF JAMES MCDONNELL, in his official capacity and as an individual; DEPUTY KENNETH COLLINS, individually and in his official capacity as a Deputy, and DOES 1 through 10, inclusive<br><br>                    Defendants. | CASE NO. CV19-08109 SVW (MAAx)<br><br>Hon. Stephen V. Wilson<br><br>STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF MATERIAL FACTS<br><br>Trial Date: TBD |

TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

Plaintiff, Daniel Nersoyan ("Plaintiff"), hereby submits this statement of genuine issues pursuant to the Central District of California Local Rule 56-2 in opposition to the motion for summary judgment filed by Defendants.

Facts 1 through 57 below correspond to the facts and supporting evidence presented in the Statement of Uncontroverted Facts filed by the moving party. The facts are followed by additional material facts and supporting evidence showing a genuine issue.

WEXFORD LAW

Plaintiff's MSJ Opposition — Genuine Facts

| STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT | PLAINTIFF'S RESPONSES |
|---|---|
| 1. Plaintiff brings this lawsuit based on a theft allegedly occurring on May 28, 2014.<br><br>[Plaintiff's First Amended Complaint (FAC), Docket Document No. 1, ¶ 29] | Plaintiff admits that this is undisputed.<br><br>However, Plaintiff discovers in late 2018, that it was an LASD Deputy that had taken the monies after years of investigation by the FBI. In the AUSA's sentencing memorandum dated October 29, 2018, Deputy Collins admits in a plea agreement that he stole $160,000 during a sham traffic stop on May 28, 2014, while driving his LASD patrol car, wearing his LASD uniform, and possessing a firearm, defendant conducted an unlawful traffic stop of a vehicle and illegally seized approximately $160,000 in cash from the vehicle. (CR 18-00038-ODW-1, Dkt. 113, ¶ II(G).) Deputy Collins was aware, in advance of the traffic stop, that there would be a large sum of cash in the vehicle and conducted the traffic stop for the purpose of illegally seizing the cash. (CR 18-00038-ODW-1, Dkt. 78, ¶ 12.)<br><br>[Exhibit 1, Government's Sentencing Memorandum, Case No. CR 18-00038-ODW-1, Dkt. 113, ¶ II(G); Exhibit 2, Collins Plea Agreement, Factual Basis, Uncharged Conduct, ¶ 12, iii] |

WEXFORD LAW

3

**Plaintiff's MSJ Opposition – Genuine Facts**

| | |
|---|---|
| 2. Nersoyan alleges that his unidentified "colleague/employee," an unidentified "broker" and an unidentified associate of the broker, while in possession of plaintiff's cash in an amount exceeding $150,000, were improperly stopped by defendant former deputy Kenneth Collins, the cash was seized, and at least one person was taken into custody.<br><br>[FAC, Docket Document No. 1, ¶ 29; Exhibit A, Plaintiff's Deposition, 41:16-42:2, 43:3-9, 43:24-44:14, 45:10-19, 47:21-48:10,50-2-4, 50:14-25, 65:6-9] | Plaintiff agrees this is undisputed. |
| 3. Plaintiff alleges he soon thereafter called the Los Angeles County Sheriff's Department (LASD) to complain about the theft, but the LASD had no interest in investigating his complaint and represented that it had no information about the alleged theft.<br><br>[FAC, Docket Document No. 1, ¶ 30 and 31] | Plaintiff admits this is undisputed. |

WEXFORD LAW

4

**WEXFORD LAW**

| | |
|---|---|
| 4. Plaintiff alleges that he has submitted multiple claims to the County that have been ignored related to this incident.<br><br>[FAC, Docket Document No. 1, ¶ 17 and 19] | Plaintiff agrees this is undisputed. |
| 5. Plaintiff asserts that the County misled him by denying that any County personnel had been involved.<br><br>[FAC, Docket Document No. 1, ¶ 19, 25, 30, 32, 33 and 78] | Plaintiff agrees this is undisputed. |
| 6. On May 28, 2014, former LASD deputy Kenneth Collins conducted a bogus traffic stop of a vehicle and took possession of cash which plaintiff claims belonged to him.<br><br>[FAC, Docket Document No. 1, ¶ 23 and 29; Exhibit A, Plaintiff's Deposition, 41:16-42:2, 43:3-9, 47:21-48:10, 65:6-9, 81:6-82:6] | Plaintiff agrees this is undisputed. |
| 7. Plaintiff admits that the broker and his associate to whom he entrusted the money, helped set up the theft with Collins.<br><br>[Exhibit A, Plaintiff's Deposition, 51:1-5, 61:19-62:1] | Plaintiff agrees this is undisputed. |

5

| | |
|---|---|
| 8. Plaintiff has been inconsistent about the amount of cash allegedly stolen, claiming it was between $150,000 and $160,000.<br><br>[FAC, Docket Document No. 1, ¶ 1, 22, and 29; Exhibit A, Plaintiff's Deposition, 43:24-44:14] | Plaintiff denies that this is undisputed.<br><br>Plaintiff states that it was $158,000. [Exhibit A, Plaintiff's Deposition, 44:14]<br><br>After FBI investigation, Collins admits taking approximately $160,000.<br><br>[Exhibit 1, Government's Sentencing Memorandum, US v. Collins, Case No. CR 18-00038-ODW-1, Dkt. 113, ¶ II(G); Exhibit 2, Collins Plea Agreement, Factual Basis, Uncharged Conduct, ¶ 12, iii] |
| 9. Plaintiff has provided no documentary proof that the money was his or that he had any legal entitlement to the allegedly stolen cash.<br>[Exhibit A, Plaintiff's Deposition, 42:7-14, 47:25-48:10, 67:11-68:1, 113:9-114:13] | Plaintiff denies that this is undisputed.<br><br>Plaintiff provided all documentation to the FBI, since, Plaintiff's copies were destroyed when his office was later, burglarized, ransacked and destroyed by fire.  [Exhibit A, Plaintiff's Deposition, 56:3-57:9, 115:12-20]<br><br>Plaintiff had documentary proof. [Exhibit A, Plaintiff's Deposition, 43:16-21, 44:21-45:9]<br><br>Plaintiff had a $300,000 line of credit with Chase bank.  [Exhibit A, Plaintiff's Deposition, 54:6-16]<br><br>Plaintiff also had a receipt from Chase Bank for the withdrawal of $40k-$50k. [Exhibit A, Plaintiff's Deposition, 76:19-77:17] |

WEXFORD LAW

6

WEXFORD LAW

| | |
|---|---|
| 10. Plaintiff claims he gave the cash to a "broker" to purchase a diamond necklace. He did not know where the necklace was located and had not vetted the authenticity of the necklace.<br><br>[Exhibit A, Plaintiff's Deposition, 47:7-48:1, 48:7-10, 65:6-17, 67:11-68:1] | Plaintiff denies that this is undisputed.<br><br>Plaintiff had vetted the authenticity of the necklace that was GIA certified. Plaintiff knew the cut, color, the clarity and the carat weight.  In addition, Plaintiff knew who was in possession of the necklace.<br><br>[Exhibit A, Plaintiff's Deposition, 46:11-15, 49:1-20] |
| 11. The broker, an associate of the broker, and plaintiff's colleague/employee, Hyrum Dubon, left plaintiff's office with the cash on the afternoon of May 28, 2014. They were to return with the necklace within one to two hours.<br><br>[Exhibit A, Plaintiff's Deposition, 65:6-17] | Plaintiff admits this is undisputed. |
| 12.  When his colleague/employee failed to return with the necklace, Nersoyan got nervous and began calling him, but Dubon did not answer his phone.<br>[Exhibit A, Plaintiff's Deposition, 73:14-74:12] | Plaintiff admits this is undisputed. |

7

WEXFORD LAW

| | |
|---|---|
| 13. Shortly thereafter, the broker called Nersoyan to report he was nervous as he was getting pulled over by a Sheriff's deputy.<br><br>[Exhibit A, Plaintiff's Deposition, 73:14-74:12, 75:4-7] | Plaintiff admits that this is undisputed. |
| 14. The next call Nersoyan got was from Dubon who told him a male African American sheriff's deputy had taken the cash and taken the broker's associate into custody.<br><br>[Exhibit A, Plaintiff's Deposition, 81:6-82:6, 84:17-85:9] | Plaintiff admits this is undisputed. |
| 15. On May 28, 2014, Nersoyan called information to obtain the phone numbers for the 3-4 Sheriff stations close to where he was told the theft occurred on East Slauson Blvd.  He called each station on May 28, 2014 and asked whoever answered the phone if a black deputy had brought in an arrestee with a large amount of cash. Each station denied any such activity.<br><br>[Exhibit A, Plaintiff's Deposition, 82:9-83:2, 83:8-11, 83:16-84:3, 85:10-16, 86:1-87:2, 103:18-105:3] | Plaintiff admits this is undisputed. |

**Plaintiff's MSJ Opposition – Genuine Facts**

| | |
|---|---|
| 16. Plaintiff admits that Collins never made a report about the May 28, 2014 incident and never booked the cash into evidence.<br><br>[FAC, Docket Document No. 1, ¶ 82 and 83; Exhibit A, Plaintiff's Deposition, 108:8-12] | Plaintiff denies this is undisputed.<br>Plaintiff stated when asked, "nothing comes out."<br>[Exhibit A, Plaintiff's Deposition, 108:8-12] |
| 17. Plaintiff also admits that no station misled him, and each Sheriff's station was telling him the truth on May 28, 2014 when they denied any arrests involving a large amount of cash had occurred out of their station.<br><br>[Exhibit A, Plaintiff's Deposition, 110:15-23, 125:10-126:8, 126:21-25] | Plaintiff denies this is undisputed.<br><br>Plaintiff claims that he received no response from the LASD, they didn't reach out to him, they refused or failed to follow up with him, that they did nothing.<br>[Exhibit A, Plaintiff's Deposition, 110:12-14] |
| 18. Plaintiff also admits that he never got any information from any source that the Sheriff's Department had any knowledge prior to May 28, 2014 that Collins intended to steal the cash.<br>[Exhibit A, Plaintiff's Deposition, 107:12-108:2, 151:16-25] | Plaintiff admits this is undisputed. |
| 19. Collins has testified that no one from the Sheriff's Department knew about his illegal activities.<br><br>[Exhibit B, Deposition of Collins,74:9-18] | Plaintiff admits that Collins testified to such. |

**Plaintiff's MSJ Opposition – Genuine Facts**

WEXFORD LAW

**WEXFORD LAW**

| | |
|---|---|
| 20. Nersoyan never called 911 or went to any Sheriff's station to make a theft report or demand that an investigation be opened. He never sent any letters or emails to the Sheriff's Department about the theft.<br><br>[Exhibit A, Plaintiff's Deposition, 85:10-18, 105:8-106:1, 110:9-23, 124:17-21] | Plaintiff denies that this is undisputed. Plaintiff *immediately and continuously* called various LASD stations in the area.  The LASD continuously ignored him.   At one point, Plaintiff may have asked to file a report.<br><br>[Exhibit A, Plaintiff's Deposition, 82:9-86:22, 92:13-15, 103:18-105:7] |
| 21. The next day, May 29, 2014, Nersoyan sent his other employee, Andy Bagdasarian, to the scene of the theft and Andy obtained two videotapes, one from a gas station and one from the traffic stop.<br><br>[Exhibit A, Plaintiff's Deposition, 106:2-16, 108:25-109:13, 109:17-110:5] | Plaintiff admits this is undisputed. |

**Plaintiff's MSJ Opposition – Genuine Facts**

| | |
|---|---|
| 22. Despite the claims in the FAC, plaintiff admits that he never gave these videotapes to or discussed the tapes with anyone at the Sheriff's Department.<br><br>[FAC, Docket Document No. 1, ¶ 31 and 32; Exhibit A, Plaintiff's Deposition, 110:24-111:4, 114:18-23, 120:6-15, 125:3-20, 143:22-144:9] | Plaintiff denies this is undisputed.<br><br>Plaintiff believes that he had at least one conversation with the LASD regarding the contents of the video tape prior to November 2015.  He was told by LASD personnel that they would get back to him, but never did, despite the fact that he left his contact information.<br><br>[Exhibit A, Plaintiff's Deposition, 120:19-121:21, 122:19-124:16] |
| 23. Instead, in June of 2014, Nersoyan gave the tapes to the FBI which promised to investigate the matter.<br><br>[Exhibit A, Plaintiff's Deposition, 111:2-22, 124:17-125:20, 127:1-18] | Plaintiff admits this is undisputed. |
| 24. Plaintiff claims the FBI encouraged him to have no contact with the Sheriff's Department to protect their investigation.<br><br>[Exhibit A, Plaintiff's Deposition, 124:17-24, 128:4-19, 130:10-132:2; 135:6-25] | Plaintiff admits this is undisputed. However, Plaintiff continued to contact the LASD.<br><br>[Exhibit A, Plaintiff's Deposition, 82:9-86:22, 92:13-15, 103:18-105:7, 120:19-121:21, 122:19-124:16] |

WEXFORD LAW

11

WEXFORD LAW

| | |
|---|---|
| 25. Plaintiff called the FBI several times between June and November of 2014, but the FBI did not seem to be progressing in their investigation.<br><br>[Exhibit A, Plaintiff's Deposition,130:10-132:2] | Plaintiff admits this is undisputed. |
| 26. Between May 28, 2014 and November 14, plaintiff placed only one other call to an unidentified Sheriff's station to express his anger about the alleged theft.<br><br>[Exhibit A, Plaintiff's Deposition, 121:2-124:21] | Plaintiff denies this is undisputed.<br><br>Plaintiff *immediately and continuously* called various LASD stations in the area.  The LASD continuously ignored him.   At one point, Plaintiff may have asked to file a report.  On another call Plaintiff wanted to discuss the video tape with the LASD.<br><br>[Exhibit A, Plaintiff's Deposition, 82:9-86:22, 92:13-15, 103:18-105:7, 120:19-121:21, 122:19-124:16] |
| 27. Plaintiff had no other communication with anyone in the Sheriff's Department between May 28, 2014 and November 18, 2014.<br><br>[Exhibit A, Plaintiff's Deposition, 121:6-124:21] | Plaintiff denies this is undisputed.<br><br>Plaintiff *immediately and continuously* called various LASD stations in the area.  The LASD continuously ignored him.   At one point, Plaintiff may have asked to file a report.  On another call Plaintiff wanted to discuss the video tape with the LASD.<br><br>[Exhibit A, Plaintiff's Deposition, 82:9-86:22, 92:13-15, 103:18-105:7, 120:19-121:21, 122:19-124:16] |

12

**Plaintiff's MSJ Opposition − Genuine Facts**

**WEXFORD LAW**

| | |
|---|---|
| 28. By November of 2014, Nersoyan was so frustrated with the FBI that on November 18, 2014, he and his attorney submitted a Government Tort Claim to the County alleging that an unidentified deputy stole $158,000 from one of his employees during a traffic stop on May 28, 2014.<br><br>[Exhibit A, Plaintiff's Deposition, 115:21-116:4, 121:2-5, 127:1-18, 128:4-19, 130:10-132:20; Exhibit C, Government Tort Claim; Inlow Decl., ¶ 5] | Plaintiff admits this is undisputed. |
| 29.  Then Sergeant, now Lieutenant Douglas Kimura, was assigned to investigate the allegations of the claim.<br><br>[Declaration of Lt. Kimura, ¶ 3-23] | Plaintiff admits this is undisputed. |
| 30. As Nersoyan's claim had provided only a partial vehicle identification number, Sgt. Kimura initially used department resources to determine which patrol car(s) could have been involved.<br><br>[Declaration of Lt. Kimura, ¶ 7] | Plaintiff denies that this is undisputed.<br><br>Plaintiff also provided a description of the deputy (which matched Collins).<br><br>[Exhibit A, Plaintiff's Deposition, 84:22-85:9] |

**Plaintiff's MSJ Opposition — Genuine Facts**

| | |
|---|---|
| 31. Sgt. Kimura also tried to contact both Nersoyan and the alleged employee on several occasions without success. As Nersoyan never called him back, Sgt. Kimura sent him a certified letter on December 16, 2014. [Declaration of Lt. Kimura, ¶ 9-11; Exhibit D, Certified Letter] | Plaintiff denies this is undisputed.<br><br>Plaintiff denies ever receiving any correspondence from Sgt. Kimura.  The post office has no record of the alleged certified letter.<br><br>[Exhibit A, Plaintiff's Deposition, 133:13-16, Exhibit Z, Deposition of Kimura, 33:22-24; See Exhibit 4] |
| 32. On December 17, 2014, Sgt. Kimura spoke with Nersoyan by telephone and learned the alleged May 28, 2014 incident was captured on videotape which was in the possession of Mr. Nersoyan's attorney. When Sgt. Kimura requested a copy of the videotape, Nersoyan terminated the call and referred Sgt. Kimura to his attorney.<br><br>[Declaration of Lt. Kimura, ¶ 14-15; Exhibit E, Audiotape of phone call between Kimura and Nersoyan] | Plaintiff denies this is undisputed.<br><br>Plaintiff denies he was ever asked for a copy of the video tape by LASD. Plaintiff does not recall speaking to anyone by the last name Kimura.<br><br>[Exhibit A, Plaintiff's Deposition, 133:13-16, Exhibit 3, Deposition of Kimura, 33:22-24] |

WEXFORD LAW

**Plaintiff's MSJ Opposition – Genuine Facts**

| | |
|---|---|
| 33. Between December 17, 2014 and January 6, 2015, Sgt. Kimura left several messages for Nersoyan's attorney without reaching him. On January 6, 2015, Sgt. Kimura called Claimant Nersoyan again and advised him that he had not been able to contact his counsel.<br><br>[Declaration of Lt. Kimura, ¶ 16; Exhibit F, Audiotape of second call between Kimura and Nersoyan] | Plaintiff denies this is undisputed.<br><br>Plaintiff denies having any contact whatsoever with anyone at the Sheriff's department after he and his attorney filed his claim, denied ever speaking with Sgt. Kimura, and denied getting the two certified letters, although he confirmed they were sent to the correct address.<br><br>[Exhibit A, Plaintiff's Deposition, 132:18-134:19] |
| 34. On January 13, 2015, Sgt. Kimura interviewed Collins who stated he had been assigned to the Emerging Leaders Academy (ELA) program since 2012. Collins denied any involvement with the alleged theft of May 28, 2014, asserting that he had never made a traffic stop while assigned to ELA.<br><br>[Declaration of Lt. Kimura, ¶ 17; Exhibit B, Collins Deposition, 74:9-18] | Plaintiff admits this is undisputed. |

WEXFORD LAW

15

WEXFORD LAW

| | |
|---|---|
| 35. On January 16, 2015, the County mailed Nersoyan a letter denying his November 2014 claim for damages. The claim denial letter advised Nersoyan that he had six (6) months from the date of the denial in which to file suit.<br><br>[FAC, Docket Document No. 1, ¶ 18; Exhibit G, Claim Denial Letter; Inlow Decl., ¶ 6] | Plaintiff denies this is undisputed.<br><br>Plaintiff denies ever receiving any correspondence from Sgt. Kimura. Unlike other letters allegedly sent by the LASD this was not sent certified mail.<br><br>[Exhibit A, Plaintiff's Deposition, 133:13-16, Exhibit 3, Deposition of Kimura, 33:22-24] |
| 36. Having received no additional information or telephone calls from Nersoyan or his attorney, Sgt. Kimura mailed a second letter to Nersoyan on January 27, 2015, advising him that his investigative efforts had been exhausted due to Nersoyan's lack of cooperation and instructing him to contact the Los Angeles Police Department regarding the claim as the location of the alleged incident was within the jurisdiction of the LAPD Newton Division.<br><br>[Declaration of Lt. Kimura, ¶ 18; Exhibit H, Second Certified Letter] | Plaintiff denies the facts are undisputed.<br><br>The Postal Service has no record of such letter.<br><br>[Exhibit A, Plaintiff's Deposition, 133:13-16, Exhibit Z, Deposition of Kimura, 33:22-24; See Exhibit 5 ] |

**Plaintiff's MSJ Opposition — Genuine Facts**

| | |
|---|---|
| 37. In his deposition, however, Nersoyan denied having any contact whatsoever with anyone at the Sheriff's department after he and his attorney filed his claim, denied ever speaking with Sgt. Kimura, and denied getting the two certified letters, although he confirmed they were sent to the correct address.<br><br>[Exhibit A, Plaintiff's Deposition, 132:18-134:19] | Plaintiff denies that this is undisputed. The United States Postal Service has no record of the alleged certified letters.<br><br><br><br>[See Exhibits 4 & 5, USPS has no records of the certified mailings.] |
| 38.  Plaintiff and his attorney considered filing a lawsuit against the LASD in 2015 but did not. Nothing by the Sheriff's Department dissuaded plaintiff from filing a lawsuit in 2014 or 2015.<br><br>[Exhibit A, Plaintiff's Deposition, 130:10-132:17, 135:6-136:4] | Plaintiff denies this is undisputed. Plaintiff filed a civil complaint in November on the advice of his attorney.  Plaintiff believed that the LASD would be interested in investigating this.  Plaintiff was led to believe by the conduct of the FBI and the LASD that it was not a deputy. Plaintiff didn't realize it was a deputy until 2018.<br><br>[Exhibit A, Plaintiff's Deposition, 16:2-17:18, 137:16-138:10, 139:18-25, 143:2-21] |

WEXFORD LAW

**Plaintiff's MSJ Opposition – Genuine Facts**

WEXFORD LAW

| | |
|---|---|
| 39.  On January 29, 2015, Claimant's attorney called Sgt. Kimura and stated he had the videotape. Sgt. Kimura arranged to go to the attorney's office on February 5, 2015 to view the tape. However, on February 3, 2015 the attorney's office left a voice message cancelling the meeting. Sgt. Kimura attempted to reschedule but was not provided a new date.<br><br>[Declaration of Lt. Kimura, ¶ 19-21; Exhibit I, Voicemail Transcript] | Plaintiff denies that this undisputed. |

**Plaintiff's MSJ Opposition — Genuine Facts**

| | |
|---|---|
| 40.  As of February 10, 2015, Sgt. Kimura had not heard further from the attorney's office. Based on the available information and the lack of cooperation by Nersoyan, Sgt. Kimura determined there was insufficient evidence to substantiate Claimant Nersoyan's claim or to identify the allegedly involved deputy.<br><br>[Declaration of Lt. Kimura, ¶ 22-23] | Plaintiff denies this is undisputable.<br><br>Plaintiff denies having any contact whatsoever with anyone at the Sheriff's department after he and his attorney filed his claim, denied ever speaking with Sgt. Kimura, and denied getting the two certified letters, although he confirmed they were sent to the correct address.<br><br>[Exhibit A, Plaintiff's Deposition, 132:18-134:19]<br><br>Plaintiff claims that the investigation was a sham and consisted of nothing more than a two-minute conversation with Collins who denied anything.<br><br>[Exhibit 3, Lt. Kimura's Deposition, 50:1-11.] |
| 41. Nersoyan admits he had no contact with anyone at the Sheriff's Department in 2015, 2016, 2017 or 2018. Nersoyan also admits he took no steps to pursue his claim against the County in 2015, 2016, 2017 or 2018.<br><br>[Exhibit A, Plaintiff's Deposition, 136:25-138:10, 138:18-139:5] | Plaintiff admits this is undisputed. |

**Plaintiff's MSJ Opposition - Genuine Facts**

WEXFORD LAW

| | |
|---|---|
| 42.  In 2017, LASD Detective Tim Berns, who is now retired, was assigned to Fraud and Cyber Crimes working on a joint ID Theft Task Force with the FBI, Secret Service, and Customs. A Reliable Confidential Informant (RCI) told Det. Berns about a then unidentified "dirty cop" initially believed to be with either the Riverside or San Bernardino Sheriff's. Det. Berns shared this information with the FBI Agent on his joint taskforce. [Declaration of Det. Berns, ¶ 1-5] | Plaintiff admits this is undisputed. |
| 43. A few weeks later the RCI determined the name of the dirty officer was Kenneth Collins. Det. Berns ran the name through the LASD database and determined Collins was with the LASD. Det. Berns shared this information with his sergeant, his captain, and the FBI.<br><br>[Declaration of Det. Berns, ¶ 6] | Plaintiff admits this is undisputed. |

WEXFORD LAW

20

| | |
|---|---|
| 44. While Det. Berns assisted the FBI as needed, the FBI conducted the investigation and ran the sting operation which resulted in the arrests of Collins and others, including Grant Valencia, on January 16, 2018. Both Collins and Valencia were convicted of federal crimes and Collins continues to be incarcerated in federal custody in Texas.<br><br>[Declaration of Det. Berns, ¶ 7-8; Exhibit B, Deposition of Collins, 8:24-9:2; Exhibit J, Ruling on *Valencia* MSJ] | Plaintiff admits this is undisputed. |

WEXFORD LAW

21

**WEXFORD LAW**

| | |
|---|---|
| 45. Valencia filed a lawsuit against the County on December 14, 2018 alleging negligent supervision and retention and a *Monell* claim for failure to investigate which he claimed resulted in his arrest with Collins. The County's motion for summary judgment was granted in full on February 24, 2020. Valencia has filed a notice of appeal but has yet to file his opening brief.<br><br>[Exhibit J, Ruling on *Valencia* MSJ; Inlow Decl., ¶ 7-8] | Plaintiff denies this is undisputed.<br><br>The *Valencia* matter is an entirely different criminal enterprise in which Collins [US v. Collins, Case No. CR 18-00038-ODW-1] and Valencia [US v. Collins, et al, Case No. CR 18-00038-ODW-3], were allegedly involved in drug smuggling which appears to have taken place years later involving at least one member of LASD, possibly more according to the FBI.<br><br>[Exhibit 6, US v. Collins, Case No. CR 18-00038-ODW-1, Grand Jury Indictment, Dkt. 31] |
| 46. Nersoyan testified that while he was in federal custody at the Metropolitan Detention Center (MDC) on charges of being a felon in possession of a gun and conspiracy to sell heroin from June of 2017 to October of 2018, the FBI approached him and told him that Kenneth Collins stole his money on May 28, 2014.<br><br>[Exhibit A, Plaintiff's Deposition, 16:2-17:18, 137:16-138:10, 139:18-25, 143:2-21] | Plaintiff admits this is undisputed. |

WEXFORD LAW

| | |
|---|---|
| 47. After he was released from prison, Nersoyan through his attorney, Michael Devereux, on April 4, 2019 submitted an Amended Government [Exhibit A, Plaintiff's Deposition, 141:10-15, 161:13-18; Exhibit K, Amended Government Tort Claim; Inlow Decl., ¶ 9] | Plaintiff admits this is undisputed. |
| 48. The County denied the Amended Claim as untimely on April 8, 2019.

[Exhibit L, Denial of Amended Claim; Inlow Decl., ¶ 10] | Plaintiff denies this is undisputed. Plaintiff filed the amended claim timely after meeting with the FBI in 2018. See Exhibits 9 & 10 |
| 49. At all times relevant to this matter, the County had written policies regarding the retention and discipline of deputies.

[Declaration of Lt. Kopperud, ¶ 5-9] | Plaintiff denies this is undisputed. County has not provided any of their written policies and/or procedures.

[Declaration of Michael Devereux, ¶¶ x-z] |

23

WEXFORD LAW

| | |
|---|---|
| 50. Per written policy, all known civilian and personnel complaints about deputy personnel were investigated and, if warranted, the deputy was subject to discipline ranging from re-training to termination for both on-duty and off-duty incidents. [Declaration of Lt. Kopperud, ¶ 9 | Plaintiff denies this is undisputed. Defendants have provided no documentary proof of such policy. Collins testified that he had no recollection of any programs for deputies that were tempted by criminal activity.  [Declaration of Michael Devereux, ¶¶ x-z, Exhibit 7, Second Deposition of Collins, 37:8-11] During the deposition of Kimura, Kimura was non-responsive in questions pertaining to the procedures of an investigation.  And when Lt. Kimura did try to answer, opposing counsel impeded the deposition. [Exhibit 3, Deposition of Kimura, 37:10-38:11, 38:25-39:25, 44:1] |
| 51. Collins served as a combat medic in the Army from 1985-1988 and has an AA degree in criminal justice. He worked as an EMT from 1989-2001 and then attended the Sheriff's Academy graduating in 2002. [Exhibit B, Deposition of Collins, 10:7-23, 11:5-18] | Plaintiff admits this is undisputed. |

Plaintiff's MSJ Opposition — Genuine Facts

| | |
|---|---|
| 52. Collins had various duty assignments until he was loaned from the Community Oriented Policing (COPS) Bureau to ELA for about two years starting in 2012. From 2014 to 2016, he was assigned to patrol out of the Alta Dena station. From 2016 until his arrest in January of 2018, he was assigned to County Services.<br><br>[Exhibit B, Deposition of Collins, 11:19-25, 12:8-24, 13:8-15, 17:18-25, 32:7-22] | Plaintiff admits this is undisputed. |
| 53. In the fifteen years in which Collins was employed as a deputy Sheriff, he received eight (8) public commendations and five (5) Unit Commander commendations.<br><br>[Declaration of Lt. Kopperud, ¶ 16] | Plaintiff denies this is undisputed.<br>Collins had been the subject of six civilian complaints, which resulted in the Watch Commander's Service Comment Report.  Three of the complaints were for theft of money.<br>[Exhibit 8, Declaration of Captain Kelly Porowski, ¶¶ 16-17] |
| 54.  He was also the subject of six civilian complaints, which were all the subject of a full inquiry resulting in a Watch Commander's Service Comment Report. Aside from routine complaints of rude or discourteous service, three of the complaints alleged theft of money.<br><br>[Declaration of Lt. Kopperud, ¶ 16-17] | Plaintiff admits this is undisputed. |

WEXFORD LAW

**WEXFORD LAW**

| | |
|---|---|
| 55.    In 2007, two suspects alleged that Deputy Collins and his partner had stolen money from them during their arrest. The money had been seized and counted in the presence of a sergeant and neither suspect complained at the time of their booking. The conduct of Deputy Collins was determined to be reasonable regarding that complaint.<br><br>[Declaration of Lt. Kopperud, ¶ 17] | Plaintiff admits this is undisputed. |
| 56.  In 2008, another suspect complained that Collins and a different partner had stolen money from a vehicle that had been sent to a tow yard. Again, the suspect did not complain at the time of booking. After an inquiry resulting in a Watch Commander's Service Comment Report, no determination was reached. [Declaration of Lt. Kopperud, ¶ 18] | Plaintiff admits this is undisputed. |
| 57.  The third claim for theft was by Nersoyan in 2014. [Declaration of Lt. Kopperud, ¶ 19-20] | Plaintiff admits this is undisputed. |

///

///

26

Plaintiff, opposing party, also contends that many of the aforementioned alleged material facts are in dispute as per the response.

Dated:  March 4, 2021                    WEXFORD LAW,


_Michael S. Devereux_

Michael S. Devereux
Attorney for Plaintiff
DANIEL NERSOYAN