**Exhibit 2**

# EXHBIT A

NICOLA T. HANNA
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
LINDSEY GREER DOTSON (Cal. Bar No. 266973)
Assistant United States Attorney
Public Corruption and Civil Rights Section
      1500 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone: (213) 894-4443
      Facsimile: (213) 894-0141
      E-mail:   lindsey.dotson@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 18-00038-ODW-1 |
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT KENNETH COLLINS |
| v. | |
| KENNETH COLLINS,<br>   aka "Kenneth Randolph," | |
| Defendant. | |

1.   This constitutes the plea agreement between KENNETH COLLINS, also known as "Kenneth Randolph" ("defendant" or "COLLINS"), and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case and the investigation of other uncharged conduct described herein in paragraph 12.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

///

///

<u>DEFENDANT'S OBLIGATIONS</u>

2.   Defendant agrees to:

a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to count one of the indictment in <u>United States v. Kenneth Collins</u>, CR No. 18-00038-ODW-1, which charges defendant with Conspiracy to Distribute Methamphetamine, Cocaine, and Marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(viii), (b)(1)(A)(ii)(II), and (b)(1)(D).

b.   Not contest the Factual Basis agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

g.   Make restitution, if ordered, at or before the time of sentencing, and not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

h.   Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

<u>THE USAO'S OBLIGATIONS</u>

3.    The USAO agrees to:

a.    Not contest the Factual Basis agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained in this agreement.

c.    At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

e.    Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not further criminally prosecute defendant for violations of 18 U.S.C. § 666 or any  other federal violations arising out of defendant's conduct described in the agreed-to factual basis set forth in paragraph 12 below.  Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement.  Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable

3

1   Sentencing Guidelines range, the propriety and extent of any
2   departure from that range, and the sentence to be imposed after
3   consideration of the Sentencing Guidelines and all other relevant
4   factors under 18 U.S.C. § 3553(a).

5                         NATURE OF THE OFFENSE

6       4.   Defendant understands that for defendant to be guilty of
7   the crime charged in count one, that is, Conspiracy to Distribute
8   Methamphetamine, Cocaine, and Marijuana, in violation of 21 U.S.C.
9   § 846, the following must be true:

10          a.   There was an agreement between two or more persons to
11  distribute methamphetamine, cocaine, and marijuana; and

12          b.   Defendant joined in the agreement knowing of its
13  purposes and intending to help accomplish those purposes.

14      5.   Defendant understands that for defendant to be subject to
15  the statutory maximum and statutory minimum sentence set forth below,
16  the government must prove beyond a reasonable doubt that defendant
17  conspired to distribute at least 50 grams of methamphetamine or at
18  least five kilograms of a mixture and substance containing a
19  detectable amount of cocaine.  Defendant admits that defendant, in
20  fact, conspired to distribute at least 50 grams of methamphetamine
21  and at least five kilograms of a mixture and substance containing a
22  detectable amount of cocaine, as described in count one of the
23  indictment.

24                     PENALTIES AND RESTITUTION

25      6.   Defendant understands that the statutory maximum sentence
26  that the Court can impose for Conspiracy to Distribute
27  Methamphetamine, Cocaine, and Marijuana, in violation of 21 U.S.C.
28  §§ 846, 841(a)(1), (b)(1)(A)(viii), (b)(1)(A)(ii)(II), and (b)(1(D)

                                    4

as alleged in count one of the indictment, is: a lifetime period of imprisonment; a lifetime period of supervised release; a fine of $10,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7.   Defendant understands that the statutory mandatory minimum sentence that the Court must impose for Conspiracy to Distribute Methamphetamine and Cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(viii), and (b)(1)(A)(ii)(II), as alleged in count one of the indictment, is 10 years' imprisonment.

8.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release.

9.   Defendant understands that under 21 U.S.C. § 862a, defendant will not be eligible for assistance under state programs funded under the Social Security Act or Federal Food Stamp Act or for federal food stamp program benefits, and that any such benefits or assistance received by defendant's family members will be reduced to reflect defendant's ineligibility.

10.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the court accepts defendant's guilty

5

plea, it will be a federal felony for defendant to possess a firearm
or ammunition.  Defendant understands that the conviction in this
case may also subject defendant to various other collateral
consequences, including but not limited to revocation of probation,
parole, or supervised release in another case and suspension or
revocation of a professional license.  Defendant understands that
unanticipated collateral consequences will not serve as grounds to
withdraw defendant's guilty plea.

11.  Defendant understands that, if defendant is not a United
States citizen, the felony conviction in this case may subject
defendant to:  removal, also known as deportation, which may, under
some circumstances, be mandatory; denial of citizenship; and denial
of admission to the United States in the future.  The court cannot,
and defendant's attorney also may not be able to, advise defendant
fully regarding the immigration consequences of the felony conviction
in this case.  Defendant understands that unexpected immigration
consequences will not serve as grounds to withdraw defendant's guilty
plea.

<u>FACTUAL BASIS</u>

12.  Defendant admits that defendant is, in fact, guilty of
Conspiracy to Distribute Methamphetamine, Cocaine, and Marijuana, in
violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(viii),
(b)(1)(A)(ii)(II), and (b)(1)(D), to which defendant is agreeing to
plead guilty.  Defendant and the USAO agree to the statement of facts
provided below and agree that this statement of facts is sufficient
to support a plea of guilty to the charge described in this agreement
and to establish the Sentencing Guidelines factors set forth in
paragraph 13 below but is not meant to be a complete recitation of

all facts relevant to the underlying criminal conduct or all facts

known to either party that relate to that conduct.

Background

At all times relevant to the charges in the indictment,

defendant COLLINS was an agent of, and public official employed by,

the County of Los Angeles and the Los Angeles County Sheriff's

Department ("LASD") as a deputy sheriff.

In or about 2014, defendant COLLINS met defendant GRANT VALENCIA

("VALENCIA") through a life-skills class called the Emerging Leaders

Academy. Defendant COLLINS was an instructor, and defendant VALENCIA

was a student. The purpose of the Emerging Leaders Academy was for

LASD deputies, like defendant COLLINS, to teach and mentor adult ex-

offenders, like defendant VALENCIA, in order to help those ex-

offenders successfully reintegrate into society.

In violation of defendant COLLINS's sworn duty as a deputy

sheriff, defendant COLLINS conspired with defendant VALENCIA and

defendant DAVID EASTER ("EASTER"), among others, to accept cash

payments in exchange for distributing controlled substances and

actively thwarting the enforcement of state and local law, including

by using his position as an LASD deputy sheriff.

Defendant COLLINS Offers to Protect Drug Transports for Cash

Beginning on or about August 2, 2017, and continuing until on or

about January 16, 2018, defendant COLLINS, a deputy sheriff, offered

to assist what he believed was a drug trafficking operation in

exchange for cash payments.

///

///

///

###### i. *The August 2, 2017 Recorded Meeting*

During a recorded meeting on or about August 2, 2017, defendant COLLINS began negotiating with an undercover FBI Special Agent ("UC-1"), who was posing as a co-conspirator of a wealthy Asian investor willing to finance the production, distribution, and sale of controlled substances. During multiple recorded conversations, defendant COLLINS claimed to run "teams" of co-conspirators, including other law enforcement officers, who provided security for illegal marijuana grow houses and drug transports. Defendant COLLINS offered to recruit and employ a team to assist UC-1 with transporting controlled substances.

###### ii. *The August 25, 2017 Recorded Meeting*

During a recorded meeting on or about August 25, 2017, defendants COLLINS and EASTER met UC-1 to discuss how defendant COLLINS, defendant EASTER, and others could provide security for an illegal marijuana grow house UC-1 was purportedly trying to establish. Defendants COLLINS and EASTER also offered to assist UC-1 with transporting and distributing controlled substances.

In defendant EASTER's presence, defendant COLLINS showed UC-1 his LASD badge and a firearm defendant COLLINS was carrying in his waistband. Defendant COLLINS displayed his badge and firearm to prove to UC-1 that defendant COLLINS was, in fact, a law enforcement officer, thereby rendering his drug security and transportation services to UC-1 more valuable.

Toward the end of this meeting, defendant COLLINS accepted $5,000 in cash hidden inside of a magazine from UC-1 as a good faith payment for future dealings together with defendant EASTER.

  *iii. The September 29, 2017 Recorded Meeting*

  During a recorded meeting on or about September 29, 2017, defendant COLLINS and UC-1 met to discuss the status of the illegal marijuana grow house UC-1 was purportedly trying to establish. Defendant COLLINS told UC-1 that instead of setting up a "major grow," UC-1 should just purchase marijuana for further distribution from defendant COLLINS directly.  Defendant COLLINS said that UC-1 should purchase marijuana "in bulk," "package it up," and "send it." Defendant COLLINS said that he could obtain marijuana for UC-1 from a "connection" defendant COLLINS had "up North."  Defendant COLLINS also told UC-1 that he and his team could assist UC-1 with transporting the marijuana.

  <u>The "Test Run" Sale of Marijuana</u>

  On or about October 6, 2017, defendant COLLINS and UC-1 met during a recorded meeting to discuss a "test run" sale of marijuana, whereby UC-1 would buy two pounds of marijuana from defendant COLLINS.  If the "test run" went well, defendant COLLINS understood that UC-1 planned to purchase greater quantities of marijuana from defendant COLLINS in the future.

  During a recorded meeting on or about October 13, 2017, defendant COLLINS agreed to sell two pounds of high-quality marijuana to UC-1 for $6,000.  If this "test run" went well, defendant COLLINS offered to facilitate the sale of up to 2,000 pounds of marijuana for $2,000 per pound -- that is, up to $4 million worth of marijuana -- every month to UC-1.

  On or about October 20, 2017, defendant EASTER delivered approximately two pounds of marijuana to an undercover FBI Special Agent ("UC-2"), who was posing as a drug trafficker working with

9

UC-1. This was the "test run" sale of marijuana that defendant COLLINS has previously negotiated with UC-1. Defendant COLLINS understood that defendant EASTER was aware that he was delivering marijuana. Shortly after the delivery, defendant COLLINS accepted $6,000 in cash from UC-1 as payment for the marijuana that defendant EASTER had just delivered to UC-2.

        The November 14, 2017 Drug Transport

        During a recorded meeting on or about October 6, 2017, defendant COLLINS offered to provide UC-1 with security for an upcoming transport of controlled substances to Las Vegas, Nevada. Defendant COLLINS demanded $25,000 for his services. He justified the $25,000 payment by saying that he and his team were "cops" and "all of our transports make it through."

        During a recorded meeting on or about November 3, 2017, UC-1 told defendant COLLINS that the November transport would consist of methamphetamine, marijuana, and counterfeit cigarettes. Defendant COLLINS agreed that, in exchange for $25,000, he and members of his team would provide security for the transport. That transport was scheduled for November 14, 2017.

        On or about November 14, 2017, defendants COLLINS, EASTER, and VALENCIA met in a grocery store parking lot in Pasadena, California to provide security for what they understood to be a drug transport to Las Vegas. The transport vehicle that day contained approximately two pounds of marijuana and counterfeit cigarettes, as well as fake methamphetamine disguised to resemble six kilograms of actual methamphetamine. UC1 told defendants COLLINS and EASTER that the "cargo look[ed] good" and contained "six of crystal," a reference to six kilograms of crystal methamphetamine. While in the parking lot,

defendant COLLINS accepted $12,500 in cash hidden inside of a brown paper bag from UC-1. This was the first installment of the agreed-upon $25,000 payment for providing security for the drug transport.

After meeting UC-1 and UC-2 in the Pasadena parking lot, defendants COLLINS, EASTER, and VALENCIA escorted the transport vehicle to Las Vegas. Defendant COLLINS provided security for the transport by driving a car behind the transport vehicle, while scouting for law enforcement and other potential threats. Defendant EASTER provided security by driving a car ahead of the transport vehicle, also while scouting for law enforcement and other potential threats. Defendant VALENCIA provided security by riding in the transport vehicle with UC-2, who was driving, and scouting for law enforcement and other potential threats. If it appeared that a law enforcement officer might conduct a traffic stop of the transport vehicle, defendant COLLINS and/or defendant EASTER planned, among other things, to drive erratically to capture the attention of the law enforcement officer, thereby causing the law enforcement officer to conduct a traffic stop of one of their cars instead of the transport vehicle.

Once the transport vehicle made it safely to Las Vegas, defendant VALENCIA accepted an envelope with $12,500 in cash from UC-2 on behalf of defendant COLLINS. This was the second installment of the agreed-upon $25,000 payment.

The January 16, 2018 Drug Transport

In the weeks following the November 14, 2017 transport, defendant COLLINS began making plans with UC-1 to provide security for an even larger drug transport. On or about December 11, 2017, defendant COLLINS met UC-1 to discuss details for a second transport

11

of controlled substances to Las Vegas.  During the recorded meeting, UC-1 told COLLINS that the transport would consist of cocaine and methamphetamine.  Defendant COLLINS said that, in exchange for $75,000, he and his team would provide security for the transport and make sure that the drugs arrived safely in Las Vegas "untouched, unscathed."

On or about January 5, 2018, defendant COLLINS and UC-1 met again to discuss details for the transport scheduled to take place on January 16, 2018.  During the recorded meeting, UC-1 told defendant COLLINS that the cargo would contain 20 kilograms of cocaine, six kilograms of methamphetamine, and cash.  Defendant COLLINS said that his "guys" were used to providing security for "bigger loads" and asked UC-1 about the possibility of doing even larger drug transports in the future.  Defendant COLLINS and UC-1 then discussed increasing the size of the January 16, 2018 transport and filling a "moving truck."  Defendant COLLINS told UC-1 that his price tag, in light of the greater drug quantity, would increase to as much as $250,000. UC-1 ultimately agreed, saying that he (UC-1) could pay defendant COLLINS $40,000 at the start of the transport, $35,000 once the transport made it safely to Las Vegas, and the remaining "charge for the bigger load" at a later date.  Defendant COLLINS agreed and said that this new plan for a larger transport would be "better."

The following day, on or about January 6, 2018, defendant COLLINS had a telephone call with UC-1 to finalize plans for the January 16, 2018 transport.  During the recorded call, UC-1 again told defendant COLLINS that the cargo would consist of "meth and coke," a reference to methamphetamine and cocaine.  Defendant COLLINS confirmed that the price for his team's services would be "two

1  dollars and fifty cent[s]," meaning $250,000 as previously negotiated
2  with UC-1.

3          On or about January 16, 2018, defendants COLLINS, EASTER, and
4  VALENCIA drove in separate cars and met at the agreed-upon location
5  and time, the Rosemont Pavilion in Pasadena at 6:00 a.m., for the
6  purpose of providing security for a transport of controlled
7  substances to Las Vegas.  Defendant COLLINS understood that defendant
8  EASTER, like defendant COLLINS, was aware that the transport vehicle
9  contained at least 20 kilograms of cocaine, six kilograms of
10 methamphetamine, and cash.  Once the three defendants arrived at the
11 Rosemont Pavilion, defendant COLLINS got out of his car and met with
12 UC-1.  Defendant COLLINS accepted $40,000 in cash from UC-1, as a
13 first installment of the agreed-upon $250,000 payment.

14         Similar to the November transport, defendants COLLINS and EASTER
15 planned to provide security by driving near or around the transport
16 vehicle to scout for law enforcement and other potential threats.
17 Instead of riding in the transport vehicle, this time defendant
18 VALENCIA also planned to drive near or around the transport vehicle
19 to scout for law enforcement and other potential threats.  If it
20 appeared that a law enforcement officer might conduct a traffic stop
21 of the transport vehicle, defendants COLLINS, EASTER, and/or VALENCIA
22 planned to, among other things, drive erratically to capture the
23 attention of the law enforcement officer, thereby causing the law
24 enforcement officer to conduct a traffic stop of one of their cars
25 instead of the transport vehicle.

26         For this transport, defendant COLLINS possessed his LASD deputy
27 badge and LASD identification card in the car he had driven to the
28 Rosemont Pavilion.  Defendant COLLINS further possessed, in that car,

a firearm, namely, a loaded Smith and Wesson, Model MP 9 Shield, nine

millimeter semi-automatic handgun, serial number HNX5846.  Defendant

COLLINS possessed the firearm that day at least in part to provide

security for the drug transport.

Other Uncharged Conduct

On or about May 28, 2014, while driving his LASD patrol car,

wearing his LASD uniform, and possessing a firearm, defendant COLLINS

conducted an unlawful traffic stop of a vehicle and illegally seized

approximately $160,000 in cash from the vehicle.  Defendant COLLINS

was aware, in advance of the traffic stop, that there would be a

large sum of cash in the vehicle and conducted the traffic stop for

the purpose of illegally seizing the cash.  In violation of LASD

policy, defendant COLLINS failed to report to LASD that he had

conducted the traffic stop or seized any cash that day.

SENTENCING FACTORS

13.  Defendant understands that in determining defendant's

sentence the Court is required to calculate the applicable Sentencing

Guidelines range and to consider that range, possible departures

under the Sentencing Guidelines, and the other sentencing factors set

forth in 18 U.S.C. § 3553(a).  Defendant understands that the

Sentencing Guidelines are advisory only, that defendant cannot have

any expectation of receiving a sentence within the calculated

Sentencing Guidelines range, and that after considering the

Sentencing Guidelines and the other § 3553(a) factors, the Court will

be free to exercise its discretion to impose any sentence it finds

appropriate between the mandatory minimum and up to the maximum set

by statute for the crime of conviction.

14.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 34 | [U.S.S.G. §§ 2D1.1(a)(5), (c)(3)] |
| Dangerous Weapon: | +2 | [U.S.S.G. § 2D1.1(b)(1)] |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

15.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

16.  Defendant understands that by pleading guilty, defendant gives up the following rights:

      a.  The right to persist in a plea of not guilty.

      b.  The right to a speedy and public trial by jury.

      c.  The right to be represented by counsel -- and if necessary have the court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the court appoint counsel -- at every other stage of the proceeding.

      d.  The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

15

1      e.   The right to confront and cross-examine witnesses

2  against defendant.

3      f.   The right to testify and to present evidence in

4  opposition to the charges, including the right to compel the

5  attendance of witnesses to testify.

6      g.   The right not to be compelled to testify, and, if

7  defendant chose not to testify or present evidence, to have that

8  choice not be used against defendant.

9      h.   Any and all rights to pursue any affirmative defenses,

10  Fourth Amendment or Fifth Amendment claims, and other pretrial

11  motions that have been filed or could be filed.

12              <u>WAIVER OF APPEAL OF CONVICTION</u>

13     17.  Defendant understands that, with the exception of an appeal

14  based on a claim that defendant's guilty plea was involuntary, by

15  pleading guilty defendant is waiving and giving up any right to

16  appeal defendant's conviction on the offense to which defendant is

17  pleading guilty.  Defendant understands that this waiver includes,

18  but is not limited to, arguments that the statute to which defendant

19  is pleading guilty is unconstitutional, and any and all claims that

20  the statement of facts provided herein is insufficient to support

21  defendant's plea of guilty.

22        <u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

23     18.  Defendant agrees that, provided the Court imposes a total

24  term of imprisonment on all counts of conviction of no more than 235

25  months, defendant gives up the right to appeal all of the following:

26  (a) the procedures and calculations used to determine and impose any

27  portion of the sentence; (b) the term of imprisonment imposed by the

28  Court; (c) the fine imposed by the court, provided it is within the

1  statutory maximum; (d) the constitutionality or legality of
2  defendant's sentence, provided it is within the statutory maximum;
3  (e) the amount and terms of any restitution order; (f) the term of
4  probation or supervised release imposed by the Court, provided it is
5  within the statutory maximum; and (g) any of the following conditions
6  of probation or supervised release imposed by the Court: the
7  conditions set forth in General Orders 318, 01-05, and/or 05-02 of
8  this Court; the drug testing conditions mandated by 18 U.S.C.
9  §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions
10 authorized by 18 U.S.C. § 3563(b)(7).

11     19.  The USAO agrees that, provided (a) all portions of the
12 sentence are at or above the statutory minimum and at or below the
13 statutory maximum specified above and (b) the Court imposes a term of
14 imprisonment of no less than 135 months, the USAO gives up its right
15 to appeal any portion of the sentence, with the exception that the
16 USAO reserves the right to appeal the amount of restitution ordered
17 if that amount is less than $36,000.

18                 RESULT OF WITHDRAWAL OF GUILTY PLEA

19     20.  Defendant agrees that if, after entering a guilty plea
20 pursuant to this agreement, defendant seeks to withdraw and succeeds
21 in withdrawing defendant's guilty plea on any basis other than a
22 claim and finding that entry into this plea agreement was
23 involuntary, then (a) the USAO will be relieved of all of its
24 obligations under this agreement; and (b) should the USAO choose to
25 pursue any charge that was either dismissed or not filed as a result
26 of this agreement, then (i) any applicable statute of limitations
27 will be tolled between the date of defendant's signing of this
28 agreement and the filing commencing any such action; and

1    (ii) defendant waives and gives up all defenses based on the statute

2    of limitations, any claim of pre-indictment delay, or any speedy

3    trial claim with respect to any such action, except to the extent

4    that such defenses existed as of the date of defendant's signing this

5    agreement.

6                        <u>EFFECTIVE DATE OF AGREEMENT</u>

7        21.   This agreement is effective upon signature and execution of

8    all required certifications by defendant, defendant's counsel, and an

9    Assistant United States Attorney.

10                        <u>BREACH OF AGREEMENT</u>

11       22.   Defendant agrees that if defendant, at any time after the

12   signature of this agreement and execution of all required

13   certifications by defendant, defendant's counsel, and an Assistant

14   United States Attorney, knowingly violates or fails to perform any of

15   defendant's obligations under this agreement ("a breach"), the USAO

16   may declare this agreement breached.  All of defendant's obligations

17   are material, a single breach of this agreement is sufficient for the

18   USAO to declare a breach, and defendant shall not be deemed to have

19   cured a breach without the express agreement of the USAO in writing.

20   If the USAO declares this agreement breached, and the Court finds

21   such a breach to have occurred, then: (a) if defendant has previously

22   entered a guilty plea pursuant to this agreement, defendant will not

23   be able to withdraw the guilty plea, and (b) the USAO will be

24   relieved of all its obligations under this agreement.

25       23.   Following the Court's finding of a knowing breach of this

26   agreement by defendant, should the USAO choose to pursue any charge

27   that was either dismissed or not filed as a result of this agreement,

28   then:

         a.  Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

         b.  Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

         c.  Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

                <u>COURT AND PROBATION OFFICE NOT PARTIES</u>

         24.  Defendant understands that the Court and the United States Probation Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

         25.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing

1   Guidelines calculations and determination of sentence, and (c) argue

2   on appeal and collateral review that the Court's Sentencing

3   Guidelines calculations and the sentence it chooses to impose are not

4   error, although each party agrees to maintain its view that the

5   calculations in paragraph 13 are consistent with the facts of this

6   case.  This paragraph permits both the USAO and defendant to submit

7   full and complete factual information to the United States Probation

8   Office and the Court, even if that factual information may be viewed

9   as inconsistent with the Factual Basis or Sentencing Factors agreed

10  to in this agreement.

11      26.  Defendant understands that even if the Court ignores any

12  sentencing recommendation, finds facts or reaches conclusions

13  different from those agreed to, and/or imposes any sentence up to the

14  maximum established by statute, defendant cannot, for that reason,

15  withdraw defendant's guilty plea, and defendant will remain bound to

16  fulfill all defendant's obligations under this agreement.  Defendant

17  understands that no one -- not the prosecutor, defendant's attorney,

18  or the Court -- can make a binding prediction or promise regarding

19  the sentence defendant will receive, except that it will be within

20  the statutory maximum.

21                    <u>NO ADDITIONAL AGREEMENTS</u>

22      27.  Defendant understands that, except as set forth herein,

23  there are no promises, understandings, or agreements between the USAO

24  and defendant or defendant's attorney, and that no additional

25  promise, understanding, or agreement may be entered into unless in a

26  writing signed by all parties or on the record in court.

27  ///

28  ///

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

28. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

NICOLA T. HANNA
United States Attorney

_Lindsey Greer Dotson_                          8/1/18
LINDSEY GREER DOTSON                            Date
Assistant United States Attorney

_[signature]_                                   7/31/18
KENNETH COLLINS                                 Date
Defendant

_[signature]_                                   7/31/18
ANTHONY WILLOUGHBY                              Date
Attorney for Defendant KENNETH COLLINS

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those

21

1  contained in this agreement. No one has threatened or forced me in

2  any way to enter into this agreement. I am satisfied with the

3  representation of my attorney in this matter, and I am pleading

4  guilty because I am guilty of the charges and wish to take advantage

5  of the promises set forth in this agreement, and not for any other

6  reason.

7  _____                    7/31/18

8  KENNETH COLLINS                               Date
   Defendant

9

10                CERTIFICATION OF DEFENDANT'S ATTORNEY

11      I am defendant KENNETH COLLINS's attorney. I have carefully and

12  thoroughly discussed every part of this agreement with my client.

13  Further, I have fully advised my client of his rights, of possible

14  pretrial motions that might be filed, of possible defenses that might

15  be asserted either prior to or at trial, of the sentencing factors

16  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

17  provisions, and of the consequences of entering into this agreement.

18  To my knowledge; no promises, inducements, or representations of any

19  kind have been made to my client other than those contained in this

20  agreement; no one has threatened or forced my client in any way to

21  enter into this agreement; my client's decision to enter into this

22  agreement is an informed and voluntary one; and the factual basis set

23  forth in this agreement is sufficient to support my client's entry of

24  a guilty plea pursuant to this agreement.

25  _____                    7/31/18

26  ANTHONY WILLOUGHBY                            Date
   Attorney for Defendant KENNETH COLLINS

27

28

                                22